UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONDA CRUTCHFIELD, ET AL.** | **CIVIL ACTION** |
| **v.** | **NO. 13-4801** |
| **SEWERAGE & WATER BOARD OF NEW ORLEANS, ET AL.** | **SECTION "C" (5)** |

## ORDER AND REASONS

Before the Court is the plaintiffs' Motion to Continue Submission Date for plaintiffs' Motion to Certify Class. Rec. Doc. 28. In addition to continuing the submission date,[1] plaintiffs also request that the Court grant discovery and allow an evidentiary hearing to occur in this matter before certification is submitted for resolution. *Id.* at 4. The Sewerage and Water Board ("the S&WB") opposes. Rec. Doc. 31.[2] Having reviewed the record, the law applicable to this matter, and the parties' submissions, the Court will GRANT plaintiffs' motion in all respects, including as to discovery and the evidentiary hearing.

**I.    Factual Background and Procedural History**

---

[1] The Court initially ruled that the plaintiffs' Motion to Certify a Class (Rec. Doc. 10) would be taken under advisement on the parties written submissions on December 4, 2013. Rec. Doc. 36. The instant motion was filed for submission on December 18, 2013 along with a motion to expedite consideration. Rec. Doc. 29. The Court denied the motion to expedite, advising the parties that its ruling on the Motion to Continue Submission Date, even if filed after the original submission date, would have retroactive effect back to the original submission date. Rec. Doc. 32.

[2] Although Hill Bros. contends that no evidentiary hearing is needed to determine that the plaintiffs' certification motion lacks merit, Rec. Doc. 26 at 8-9, they have filed no express opposition to the hearing. They would request a hearing before any determination that the plaintiffs were entitled to certification. *Id.* at 9.

The putative class plaintiffs raise claims of damage stemming from construction of an intake canal under Dwyer Road in the Ninth Ward of New Orleans. Rec. Doc. 1-2. The Dwyer Road Intake Canal ("Dwyer Canal" or "project") is part of the Southeastern Louisiana Urban Flood Control Project ("SELA"), a federal partnership with state and local Louisiana governments authorized by Congress in 1996 and administered by the U.S. Army Corps of Engineers (the "Corps"). *See* Water Resources Development Act of 1996, PL 104-303, October 12, 1996, 110 Stat 3658, § 533. Upon completion, the Dwyer Intake Canal will be 7000 feet long and 14 to 16 feet deep, and run from the Dwyer Road Pumping Station, located at the intersection of Dwyer and Jourdan Roads, to the St. Charles Canal, near the intersection of Dwyer and Camelia Court. Rec. Doc. 1-2, ¶¶ 28-29.

The plaintiffs allege that the S&WB exercised oversight and control over the project in accordance with its statutory mandate. La. Rev. Stat. 33:4081; Rec. Doc. 1-2, ¶ 12. It is uncontested that Hill Bros. Construction Inc. ("Hill Bros.") acted as general contractor for construction of the canal under a contract with the Corps. Rec. Doc. 1-2, ¶ 17; Rec. Doc. 1-4, ¶ 6; Rec. Doc. 26 at 1. Construction began in September or October of 2008, which has continued until at least the end of November 2013. Rec. Doc. 27 at 4.

The project allegedly has required excavation of 110,000 cubic yards of soil to an average depth of 18 feet, which in turn has required a comprehensive dewatering effort to keep ground and rain water from filling excavated areas. Rec. Doc. 1-2, ¶ 28. Thus, a retaining structure 25 feet wide and 18 feet deep was built along the entire project. *Id.* In addition to excavation, the project is alleged to have involved significant pile-driving. According to

plaintiffs, 86,000 square feet of sheet piling, 178,000 linear feet of timber, and 17,250 linear feet of steel pipe piling were driven into the ground at the project site. *Id.*, ¶ 29.

During the project, defendants collected and monitored data on vibrations and groundwater levels. *Id.*, ¶ 44; Rec. Doc. 27 at 5. The purpose of this effort was to allow the S&WB to investigate anticipated damages claims by property owners. Rec. Doc. 1-2, ¶ 44.

Plaintiffs and putative class representatives filed this action in the Orleans Parish Civil District Court on August 13, 2012 against the S&WB among others, claiming that excavation, dewatering, and pile-driving related to the project had resulted and would result in damage to their immovable property, which, in turn, had caused mental anguish and emotional distress. Rec. Doc. 1-2, ¶¶ 39-41, 103. The theories of recovery pleaded were: (1) damage caused by a thing in custody under La. Civ. Code arts. 2317 and 2317.1, (2) strict liability for ultrahazardous activity under La. Civ. Code art. 667, (3) negligent damaging and misrepresentation under La. Civ. Code art. 2315, (4) inverse condemnation under Article I, section 4 of the Louisiana Constitution, (5) failure to protect from vice, ruin, or defect under La. Civ. Code arts. 662, 667, and 668, and (6) intentional misrepresentations and mistreatment before and during construction. *Id.*, ¶¶ 65-101.

In May 2013, the S&WB filed a third-party complaint against Hill Bros., claiming that Hill Bros. was responsible for the construction activities that allegedly damaged plaintiffs' property, and that, in doing so, Hill Bros. had breached its construction contract. Rec. Doc. 1-4.[3]

---

[3] Although plaintiffs originally named Hill Bros. and other private contractors in their original damages petition, they moved to dismiss them voluntarily without prejudice in early September 2012.

Hill Bros. removed this action on June 14, 2013, Rec. Doc. 1, and answered the S&WB's third-party complaint with several affirmative defenses, Rec. Doc. 27.

In September 2013, plaintiffs moved to certify a class of:

All property owners and residents who owned immovable property or resided within 1,000 feet to the north and south of Dwyer Road from Jourdan Road to Tulip Street, New Orleans Louisiana 70126 during the time period of September 9, 2008 to the present and continuing until the DPS-SELA project is fully complete and accepted,

under Rule 23(b)(3). Rec. Doc. 10, ¶X. In that motion, plaintiffs urged the Court to set a contradictory hearing at which the parties could put forward evidence. *Id.*, ¶XVI. Both the S&WB and Hill Bros. oppose certification. Rec. Docs. 27 & 26.

After this Court noticed that plaintiff's motion to certify would be heard on the briefing on December 4, 2013, plaintiffs moved to continue the hearing date until after the Court has allowed sufficient pre-certification discovery. Rec. Doc. 28-1.

## II.    Contentions of the Parties

Plaintiffs' Motion to Continue Submission Date points primarily to plaintiffs' need for, and the S&WB's refusal to allow, access to the files of Leonard Quick pertaining to this project. Rec. Doc. 28-1 at 3. Leonard Quick is an expert retained by the S&WB in anticipation of litigation to photograph and survey the neighborhood. Rec. Doc. 7-5 at 24-27. Plaintiffs claim that Quick's "pre-construction photographs, post-construction inspections and photographs and the elevation measurements" are relevant to their motion to certify. Rec. Doc. 47; Rec. Doc. 28-1 at 3. On December 9, 2013, plaintiffs issued a subpoena *duces tecum* to Quick for records related to the Dwyer Intake Canal. *See* Rec. Doc. 40-2. The S&WB filed a motion to quash the subpoena

4

that the Magistrate Judge granted without prejudice pending the outcome of this motion and the Motion to Certify a Class. Rec. Doc. 54.

The S&WB opposes the Motion to Continue Submission Date, the request for additional discovery, and the request for an evidentiary hearing, claiming that the class certification issues can be resolved on the pleadings, which show that causation and damages are individual to each putative class member and will predominate over any issues of law or fact common to the class. Rec. Doc. 31 at 1, 3.

### III. Standard of Review

The district court has substantial discretion over the procedures used to determine whether class certification is appropriate. *Stewart v. Winter*, 669 F.2d 328, 332 (5th Cir. 1982). To certify a class, a court must conduct a "rigorous analysis" of the Rule 23 prerequisites. *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996); *accord Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("District courts are required to take a "close look" at the parties' claims and evidence in making its Rule 23 decision.") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997)). Such rigorous analysis requires a court to go "beyond the pleadings" to "understand the claims, defenses, relevant facts, and applicable substantive law" governing claims on which certification is sought. *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011) (quoting *Unger*, 401 F.3d at 321). "The Fifth Circuit has observed, . . . that 'in most cases' a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action." *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 438 (E.D. La. 2010) (citations omitted).

Nevertheless, neither an evidentiary hearing nor discovery is absolutely required in the class certification process. "Sometimes the issues are plain enough from the pleadings" to allow the Court to reach a sound determination on the certification question. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)). "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also Stewart*, 669 F.2d at 332 (upholding district court's denial of certification without allowing discovery).

### IV. Analysis

For certification to be proper under Rule 23(b)(3), questions of law or fact common to the class must predominate over any questions affecting only individual members. Predominance is considered a demanding requirement for any putative class and requires that class member claims on the whole be sufficiently cohesive to warrant class adjudication. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006). "Determining whether legal issues common to the class predominate over individual issues requires that the court inquire how the case will be tried." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (citing *Castano*, 84 F.3d at 744). "This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Id.* Certification, and by extension predominance, must be considered on an independent, claim-by-claim basis. *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 295 (5th Cir. 2001).

All of the plaintiffs' causes of action are "mass torts" in the sense that issues of law and fact related to liability appear common to all class members, but issues related to causation of specific damages appear individual to each class member. *See Castano*, 84 F.3d at 746 & n.23. The parties dispute whether the former or the latter will predominate. Rec. Doc. 10-1 at 15; Rec. Doc. 27 at 17.

The pleadings in this case show that proof that the defendants' construction activity caused specific, compensable damages could potentially involve extensive and highly individualized proof on the part of each class member. Plaintiffs' original argument to the contrary assumed, incorrectly, that each class member could meet its burden simply by presenting an estimate of property damages sustained since the project began. Rec. Doc. 10-1 at 15. Even assuming that such claims are not complicated by environmental factors, class members would need to distinguish between damages attributable to pile-driving and other construction activity in order to recover under Article 667, at the very least. Conceivably, members would need to show damage attributable to a specific kind of construction activity for their negligence and garde theories as well, if a fact-finder were to reject liability for one kind of construction activity (e.g., dewatering) but not others. The only claim apparently immune from this issue is plaintiffs' claim for inverse condemnation.

To exclude environmental causes for structural property damages and substantiate their emotional distress claims, class members would need to present evidence of their exposure to vibration and dewatering, which would vary from property to property. Although plaintiffs correctly note that there are some general scientific causation issues common to the class, *see* Rec. Doc. 10-1 at 9, these issues appear slight by comparison.

Separate and apart from the individualized nature of the *extent* of damage to each class-member property, is the individualized nature of the *value* of said damage to each class member. Even if the foundations of each class-member property have shifted by the same degree during construction, a fact-finder could not necessarily conclude that each class member had suffered by the same degree because of variations in the age and condition of each house at the time of construction.

Finally, the plaintiffs have alleged emotional injuries as part of their compensatory damages for some if not all of the claims in this case. Rec. Doc. 1-2, ¶ 103(C)-(D). The Fifth Circuit has held that such injuries are not appropriate for class-wide determination and will tend to overwhelm and predominate over any common issues where they are a part of the case. *See Steering Comm.*, 461 F.3d at 602 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir.1998)).

Each of the above factors weighs heavily in favor of a finding that individual issues of causation and damages will predominate over any liability issues common to the class for all of the putative class claims. Nevertheless, and while the Court is wary of having the parties undergo discovery and an evidentiary hearing when to do so would be futile, the Court is unable to make a sound determination regarding predominance without additional information about the nature of the common liability issues in this case and about the susceptibility of causation and damages issues to formulaic reduction.

In this case, the degree of proof required to establish liability appears to vary significantly from claim to claim. As to plaintiffs' claim under Article 667, it is very simple to show that defendants' engaged in the ultra-hazardous activity of pile-driving; according to the

8

Louisiana Supreme Court, the term is construed quite literally. *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So. 2d 37, 48-51. By contrast, plaintiffs allege class-wide negligence claims based on (1) defendants' knowledge of a class-wide condition or circumstance, such as the ground water and vibration thresholds needed to avoid damage to class members' properties, sufficient to create a class-wide duty to act or refrain from acting; and/or (2) a decision affecting the entire class, such as the decision not to monitor ground water beyond a certain distance for the entire project, which constituted a breach of duty. *See* Rec. Doc. 34 at 4-10. By all appearances, these are very fact-intensive claims of liability. To clarify them, plaintiffs require access to information regarding defendants' class-wide decision making and knowledge of class-wide circumstances, including, if discoverable, that which is held by Mr. Quick. Further, the Court would be better equipped to understand these issues after an evidentiary hearing.

Next, as the S&WB acknowledges in its opposition, "the necessity of calculating damages on an individual basis will not necessarily preclude class certification," particularly where individual damages can be determined by reference to a mathematical formula. *Steering Comm.*, 461 F.3d at 602. As defendants' argue, certain aspects of the damages alleged, i.e., emotional distress and damage to individual items of movable property, defy mathematical calculation. *Id.* On the other hand, plaintiffs' claims of foundation damage and other kinds of hard to observe structural damages appear well-suited for it, especially in light of the fact that each properties' exposure to vibration and dewatering was measured by defendants or their contractors in this case. This, again, points in the direction of files held by Mr. Quick.

The S&WB points to several different mass tort cases in which damages could not be calculated by formula to argue that the same is true in this case. Rec. Doc. 27 at 20-23. However, plaintiffs in this case have not had the opportunity to put forward a model or formula; therefore, the Court cannot reach the same conclusion. The Court also notes that at first blush, structural damage to a house does not appear as difficult to explain or model as consumer behavior, *Cf. Comcast Corp. v. Behrend*, 569 U.S. __, __, 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515 (2013); *MP Vista, Inc. v. Motiva Enterprises*, LLC, 286 F.R.D. 299, 312 (E.D. La. 2012), or damage to the human body from inhaling chemical fumes, *cf. Steering Comm.*, 461 F.3d at 604. The putative class is geographically confined and alike in its relationship to the alleged source of damage by comparison to a class of all Louisiana homeowners who lost property in Hurricane Katrina. *Cf., e.g.*, *Terrebonne v. Allstate Ins. Co.*, 251 F.R.D. 208, 211 (E.D. La. 2007). Construction activity does not cause property damage as variably as hurricanes or hailstorms. *Cf. id.*; *Pollet, Jr. v. Travelers Property Cas. Ins. Co.*, 01-863, 2001 WL 1471724 (E.D. La. Nov. 16, 2001). Therefore, the Court will continue the submission date of plaintiffs' Motion to Certify a Class, order that discovery take place, and order an evidentiary hearing thereafter.

Finally, the Court notes that the Fifth Circuit has directed the district courts to use the "prior track record of trials" to "draw the information necessary to make the predominance and superiority analysis required by rule 23," *Castano*, 84 F.3d at 747, and that such a track record exists in this case, *see Holzenthal v. Sewerage & Water Bd. of New Orleans*, 06-0796 (La. App. 4 Cir. 1/10/07), 950 So. 2d 55, 61 (concerning similar Uptown construction project). Neither party has sought to draw meaningfully from that previous trial experience to argue for the predominance of one set of issues or the other. In particular, defendants' argument that

predominance can be resolved by reference to the pleadings is based on a great deal of supposition and inference about how a trial on these claims would unfold. Though to be certain, defendants do not bear the burden to disprove the propriety of certification, *see Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482 (5th Cir. 2001), the Court is not inclined to make a determination "on the pleadings" where better evidence is seemingly readily available. Accordingly,

IT IS ORDERED that plaintiffs' Motion to Continue Submission Date for plaintiffs' Motion to Certify Class is hereby GRANTED. Rec. Doc. 28.

IT IS FURTHER ORDERED that the parties contact Magistrate Judge Alma Chasez by February 14, 2014 to setup a scheduling conference for pre-certification discovery.

New Orleans, Louisiana, this 30th day of January, 2014

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**