UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


RONDA CRUTCHFIELD, ET AL.                    CIVIL ACTION

v.                                           NO. 13-4801

SEWERAGE & WATER BOARD OF                    SECTION "F"

NEW ORLEANS, ET AL.


ORDER AND REASONS

Before the Court are three motions:  (1) the plaintiffs'
renewed motion to certify class; (2) the defendants' joint motion
to strike expert affidavits, reports, and testimonies and exhibits
in support of the motion to certify class; and (3) the defendants'
joint motion to strike testimony of plaintiffs in support of the
motion to certify class.  The motions to strike are considered
first.  For the reasons that follow, the motions to strike are
DENIED, and the motion to certify class is also DENIED.

Background

The putative class plaintiffs raise claims of damage stemming
from construction of an intake canal under Dwyer Road in the Ninth
Ward of New Orleans.  The Dwyer Road Intake Canal is part of the
Southeastern Louisiana Urban Flood Control Project (SELA), a
federal partnership with state and local Louisiana governments
authorized by Congress in 1996 and administered by the U.S. Army

1

Corps of Engineers.  <u>See</u> Water Resources Development Act of 1996, PL 104-303, October 12, 1996, 110 Stat 3658, § 533.  Upon completion, the Dwyer Intake Canal will be 7,000 feet long and 14 to 16 feet deep, and run from the Dwyer Road Pumping Station, located at the intersection of Dwyer and Jourdan Roads, to the St. Charles Canal, near the intersection of Dwyer and Camelia Court.

The plaintiffs allege that the Sewerage & Water Board exercised oversight and control over the project in accordance with its statutory mandate.  La. Rev. Stat. 33:4081.  It is uncontested that Hill Brothers Construction, Inc. acted as general contractor for construction of the canal under a contract with the Corps. Construction began in September or October of 2008 and continued for several years; the project still remains unaccepted by the government.  The project allegedly has required excavation of 110,000 cubic yards of soil to an average depth of 18 feet, which in turn has required a comprehensive dewatering effort to keep ground and rain water from filling excavated areas.  Thus, a retaining structure 25 feet wide and 18 feet deep was built along the entire project.  In addition to excavation, the project is alleged to have involved significant pile-driving.  According to plaintiffs, 86,000 square feet of sheet piling, 178,000 linear feet of timber, and 17,250 linear feet of steel pipe piling were driven into the ground at the project site.

During the project, defendants collected and monitored data on

vibrations and groundwater levels.  The purpose of this effort was to allow the S&WB to investigate anticipated damages claims by property owners.  Plaintiffs and putative class representatives filed this action in the Orleans Parish Civil District Court on August 13, 2012, against the S&WB among others, claiming that excavation, dewatering, and pile-driving related to the project had resulted and would result in damage to their immovable property, which, in turn, had caused mental anguish and emotional distress. The theories of recovery pleaded were: (1) damage caused by a thing in custody under La. Civ. Code arts. 2317 and 2317.1; (2) strict liability for ultrahazardous activity under La. Civ. Code art. 667; (3) negligent damaging and misrepresentation under La. Civ. Code art. 2315; (4) inverse condemnation under Article I, section 4 of the Louisiana Constitution; (5) failure to protect from vice, ruin, or defect under La. Civ. Code arts. 662, 667, and 668; and (6) intentional misrepresentations and mistreatment before and during construction.

In May 2013, the S&WB filed a third-party complaint against Hill Brothers, claiming that Hill Brothers was responsible for the construction activities that allegedly damaged plaintiffs' property, and that, in doing so, Hill Brothers had breached its construction contract.  Although plaintiffs originally named Hill Brothers and other private contractors in their original damages petition, they moved to dismiss them voluntarily without prejudice

3

in early September 2012.

Hill Brothers removed this action on June 14, 2013, and answered the S&WB's third-party complaint with several affirmative defenses.

The plaintiffs first filed a motion to certify class in another section of this Court almost two years ago.  The Court subsequently granted a motion to continue the motion's submission date and the plaintiffs' request for pre-certification discovery.  A year later, in January 2015, the plaintiffs renewed their motion to certify class action.  But shortly thereafter, Judge Berrigan recused herself from the case and it was transferred to this section.  This Court, in attempt to start anew, denied without prejudice the motion to certify and cancelled the as-yet-unscheduled hearing that Judge Berrigan had granted.  In that same Order, the Court granted the plaintiffs leave to submit a renewed motion to certify, "along with a supported request for an evidentiary hearing or oral argument, should they deem either proper."[1]  The Court also instructed the plaintiffs to submit, along with their renewed motion, all exhibits that they wished the Court to consider.  The plaintiffs filed their motion and requested oral argument, which was granted; a request for a hearing was never

_____

[1] See Order dated March 16, 2015.

4

made.[2]

The plaintiffs seek to define the class as:

All property owners and residents who owned immovable property or resided within 1,000 feet to the north and south of Dwyer Road from Jourdan Road to Tulip Street, New Orleans, Louisiana 70126, during the time period of September 9, 2008 to the present and continuing until the Dwyer Intake Canal project is fully completed and accepted.

The defendants oppose class certification and move to strike several plaintiffs' exhibits.

## I. Motion to Strike Expert Exhibits

### A.

Rule 702 was enacted in response to the United States Supreme Court's decisions in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and Kuhmo Tire v. Carmichael, 526 U.S. 137 (1999), which held that before an expert is allowed to testify, the trial court must assess the reliability of the methodology of the proposed expert and the relevance of the testimony to the facts at issue. Legier & Materne v. Great Plains Software, Inc., No. 03-0278, 2005 WL 2037346 at *1 (E.D. La. Aug. 3, 2005) (Duval, J.). Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence

---

[2] In response to the defendants' motions to strike their evidence, the plaintiffs repeatedly attribute evidentiary defects to the lack of a hearing and the Court's "deci[sion] that class certification would be submitted on the briefs."  The Court welcomed a request for an evidentiary hearing and heard oral argument upon the plaintiffs' request.

> or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the
> witness has applied the principles and methods reliably
> to the facts of the case.

Fed. R. Evid. 702.

Under <u>Daubert</u>, the proponent of the evidence must first prove that the offered testimony is based on sufficient facts or data. <u>See</u> Fed. R. Evid. 702. Next, the party must "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. . . . The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." <u>Moore v. Ashland Chemical, Inc.</u>, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The proponent of the evidence must prove the testimony's reliability by a preponderance of the evidence. <u>Id.</u>  In <u>Daubert</u>, the Supreme Court identified a non-exclusive list of factors for a district court to consider in determining reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. <u>Daubert</u>, 509 U.S. at 593-95.  A district court must focus on methodology, not conclusions.  In <u>Kumho Tire</u>, the Court cautioned that the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences,

6

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152.  After the proponent of the expert testimony has carried her burden of showing reliability, the party must also prove the expert opinions' relevance.  That is, that the experts' opinions have "a valid . . . connection to the pertinent inquiry."  Daubert, 509 U.S. at 592.

At the certification stage, however, the district court does not conduct a comprehensive Daubert review.  Rather, the plaintiffs need only show that their "expert onions contain no flaws that would render them inadmissible as a matter of law: the methodology must show some hallmarks of reliability, whether through peer review or use of generally accepted standards or methods; the expert must be qualified; and the opinion must have some probative value for the issues of class certification.  In re Katrina Canal Breaches Consol. Litigation, No. 05-4182, 2007 WL 3245438, at *12 (E.D. La. Nov. 1, 2007) (Duval, J.).  Comprehensive expert reports that are required on the merits are not feasible at the Rule 23 stage.

B.

The defendants, who cite several cases that are inapplicable to the extent that they concern comprehensive Daubert hearings at trial or at a summary judgment stage, contend that the plaintiffs' experts' testimonies fail "both the Daubert and the Daubert-lite

7

standards required for admissibility." The Court begins by underscoring that the full requirements of Daubert need not be met at this stage, and any argument to the contrary is misplaced.

The defendants' primary complaint, it seems, is that the experts have not yet gathered and applied to their methodologies all of the data necessary to analyze causation, damages, and typicality. At this stage, however, the methodology, rather than the results of its implementation, are at issue. In re Katrina Canal Breaches, 2007 WL 3245438, at *14 ("While Kilpatrick has not yet reached the empirical investigation stage, certainly, his report demonstrates that the mass appraisal technique is accepted and can demonstrate commonality for purposes of computation of damages. The Court must reiterate that it is accepting this expert for purposes of demonstrating Rule 23 criteria; when and if this matter goes to trial on the merits, the report which by then should encompass all the empirical data necessary to create a model to demonstrate damages must be present.").

There is ample evidence that the plaintiffs' experts are qualified and no assertion that they are not; thus, the remaining questions are whether (1) the methodology shows some hallmarks of reliability, whether through peer review or use of generally accepted standards or methods; and (2) the opinion has some probative value for the issues of class certification. The defendants challenge the methodologies of Dr. Peter Cali and Dr.

Ghose-Hajra, as well as the Gurtler Brothers, and the methodology and probative value of Dr. Jimmie Thorns's stigma analysis.

The Court finds that at this stage, the methodologies of Drs. Cali and Hajra and the Gurtler Brothers are not insufficient as a matter of law.  In fact, they implement many of the same techniques as do the experts for the defendants.  Defense experts Leonard Quick, Ralph Junius, and David Lourie testified that they would use the same engineering principles, methodology, and equations as Dr. Cali.  Lourie and Quick would also use the same principles and methodology as Hajra to determine the properties that experienced excessive vibration levels from pile driving.  Defense experts use the same types of maps, property databases, satellite imagery, and repair cost estimating software as that chosen by the Gurtler Brothers.  The question is not whether the experts' reports will resolve this case in favor of the proposed class; the question, rather, is whether the methodologies put forth by the plaintiffs' experts "show some hallmarks of reliability."  Because they use generally accepted standards or methods—those used by defense experts as well—they are sufficient at the Rule 23 stage.

As to Thorns's stigma opinion, challenges to which the plaintiffs do not respond, the Court agrees that his opinion, as it stands now, does little to assist the Court.  Thorns testifies that buyers are less likely to want to buy property in the affected neighborhood because of the lengthy and damaging construction

project.  Perhaps true.  Perhaps raw advocacy speculation.  At the merits stage, however, Thorns purports to offer an analysis of the economic effects of the construction project, as he has done in other litigation.  The Court does not exclude his opinion at this stage, though it notes that it clearly does not further the Court's analysis in its current form.

Finally, the defendants challenge the materials on which the various experts rely, submitting that they are inadmissible hearsay.  But experts are allowed to rely on such evidence. Brickley v. Scattered Corp. (In re H&M Oil & Gas, LLC), 511 B.R. 408 (Bankr. N.D. Tex. 2014); Sinclair v. State Farm Fire & Cas. Co., No. 09-447, 2010 WL 8150678) (E.D. La. Feb. 10, 2010). Moreover, "there is less need for the [evidentiary] gatekeeper to keep the gate when the gatekeeper is only keeping the gate for himself."  Payton v. Entergy Corp., No. 12-2452, 2013 WL 522712 (E.D. La. Oct. 21, 2013).  Thus, the defendants' motion to exclude certain expert testimony and exhibits is hereby DENIED.[3]

## II. Motion to Strike Plaintiffs' Testimony

The defendants move to strike the plaintiffs' testimony that is attached as exhibits to the motion to certify class.  The five-page memorandum in support asks the Court to exclude, among other

---

[3] The Court notes that the defendants rely on the weaknesses of the experts' contentions in their arguments against class certification.  The question raised by the defendants' motion is whether their testimony is admissible, not whether it should be accepted as the absolute truth.

evidence, the deposition testimony and affidavits of six plaintiffs in their entirety.  Without addressing each exhibit's allegedly inadmissible content, the defendants instead simply list exhibit numbers and state that they include hearsay, speculation, and facts outside of the affiant's personal knowledge.  Select portions of some of the testimony or affidavits may include possibly inadmissible evidence, and to the extent that is true, the testimony is not relied upon.  In fact, most of it is not persuasive anyway; the Court cannot base class certification on a plaintiff's statement that her neighbors told her their houses were damaged.  Such a story is at best self-serving.  But, nonetheless, the defendants' sweeping request before the Court is overly broad and thus denied.[4]

### III. Motion to Certify Class Action

#### A.

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." East Tex. Motor Freight System, Inc. v. Rodriquez, 431 U.S. 395, 403

---

[4] The request is so broad, in fact, that it seeks to exclude on the basis of hearsay a photo that does not purport to make any assertion and thus is not hearsay.

11

(1977) (quoting <u>Schlesinger v. Reservists Comm. to Stop the War</u>,
418 U.S. 208, 216 (1974)).  Rule 23 of the Federal Rules of Civil
Procedure provides, in pertinent part:

> (a) Prerequisites. One or more members of a class may sue
> or be sued as representative parties on behalf of all
> members only if:
>
> > (1) the class is so numerous that joinder of all
> > members is impracticable;
> >
> > (2) there are questions of law or fact common to
> > the class;
> >
> > (3) the claims or defenses of the representative
> > parties are typical of the claims or defenses of
> > the class; and
> >
> > (4) the representative parties will fairly and
> > adequately protect the interests of the class.
>
> (b) Types of Class Actions. A class action may be
> maintained if Rule 23(a) is satisfied and if: . . .
>
> > (3) the court finds that the questions of law or
> > fact common to class members predominate over any
> > questions affecting only individual members, and
> > that a class action is superior to other available
> > methods for fairly and efficiently adjudicating the
> > controversy. The matters pertinent to these
> > findings include:
> >
> > > (A) the class members' interests in individually
> > > controlling the prosecution or defense of separate
> > > actions;
> > >
> > > (B) the extent and nature of any litigation
> > > concerning the controversy already begun by or
> > > against class members;
> > >
> > > (C) the desirability or undesirability of
> > > concentrating the litigation of the claims in the
> > > particular forum; and
> > >
> > > (D) the likely difficulties in managing a class
> > > action.

Fed. R. Civ. P. 23(a), (b)(3).

*i. Rule 23(a)*

Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—"effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.' " General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting General Telephone Co. of Northwest v. EEOC, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)).

**Numerosity.**  Rule 23(a) contains an implied requirement that the class be adequately defined and clearly ascertainable by reference to objective criteria. Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 639 (5th Cir. 2012); In re Fosamax Prods. Liab. Litig., 248 F.R.D. 389, 395 (S.D.N.Y.2008).  In order to satisfy Rule 23(a)(1)'s numerosity requirement, the mover typically must show that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members. Pederson v. La. State Univ., 213 F.3d 858, 868 (5th Cir. 2000).

**Commonality.**  Commonality under Rule 23(a)(2) requires "that all of the class member's claims depend on a common issue of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one

13

stroke.'"  M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 840 (5th Cir. 2012) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011)) (emphasis omitted).   The Supreme Court's recent decision in Wal-Mart "heightened the standards for commonality." Id. at 839.   After Wal-Mart, Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because "'any competently crafted class complaint literally raises common questions.'"   Id. (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).   Further, the members of a proposed class do not establish that "their claims can productively be litigated at once," merely by alleging a violation of the same legal provision by the same defendant, as plaintiffs do here regarding article 667 of the Louisiana Civil Code and strict liability issues.   Id. ("[T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once."). Instead, the Court held that the claims of every class member must "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.; see id. ("'What matters to class certification . . . is not the raising of

common 'questions'—even in droves—but, rather, the capacity of a classwide proceedings to generate common answers apt to drive the resolution of the litigation.'") (quoting Nagareda, 84 N.Y.U. L. REV. at 132).  Thus, the commonality test is no longer met when the proposed class merely establishes that "there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'"  Forbush, 994 F.2d at 1106 (emphasis added) (citation omitted).  Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke."  Wal-Mart, 131 S.Ct. at 2551.

The Court further clarified that a trial court's obligation to perform a "rigorous analysis" before concluding that a class has satisfied the requirements of Rule 23(a) "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim."  Id.; see Falcon, 457 U.S. at 160 ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.") (internal citation and quotation marks omitted).  Lastly, after the Court concluded that "proof of commonality necessarily overlap[ped] with the [purported class

members'] merits contention that Wal-Mart engaged in a pattern or practice of discrimination," the Court probed beyond the plaintiffs' pleadings in an effort to decide if an "examination of all the class member's claims for relief will produce a common answer to the crucial [merits] question why was I disfavored." Wal-Mart, 131 S.Ct. at 2552. In doing so, the Court "focus[ed]" on dissimilarities among the proposed class members "in order to determine whether there is even a single common question." Id. at 2556 (internal citation and quotation marks omitted); see id. at 2551 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.") (quoting Nagareda, 84 N.Y.U. L. Rᴇᴠ. at 132).

*Typicality.* The typicality requirement under Rule 23(a)(3) is not demanding; "[i]t focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625 (5th Cir. 1999), abrogated in part by, Wal-Mart, *supra*, as recognized in M.D. ex rel. Stukenberg, 675 F.3d at 839-40. "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." James v. City of Dallas,

16

254 F.3d 551, 571 (5th Cir.2001), abrogated in part by, Wal-Mart, supra, as recognized in M.D. ex rel. Stukenberg, 675 F.3d at 839-40; see also Mullen, 186 F.3d at 625 ("Any variety in the illnesses the Named Plaintiffs and the class members suffered will not affect their legal or remedial theories, and thus does not defeat typicality."). Courts have held that "[t]he major concern under Rule 23(a)(3) is if unique defenses against a named plaintiff threaten to become the focus of the litigation," and that the key to the typicality inquiry is "whether a class representative would be required to devote considerable time to rebut the Defendants' claims." In re Enron Corp. Secs. Litig., 529 F.Supp.2d 644, 674 (S.D. Tex. 2006) (citation and quotation omitted).

***Adequacy of Representation.*** Rule 23(a)(4)'s adequacy requirement "encompasses class representatives, their counsel, and the relationship between the two." Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir. 2001). Thus, "the adequacy requirement mandates an inquiry into (1) the zeal and competence of the representatives' counsel, and (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of the absentees." Id. (citations, quotations, and alterations omitted). Finally, "'[t]he adequacy inquiry also serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" Id. at 479-80 (quoting Amchem Prods., Inc. v.

17

_Windsor_, 521 U.S. 591, 625 (1997)).

<em>ii. Rule 23(b)(3)</em>

Rule 23(b)(3) requires a party seeking class certification to "demonstrate 'both (1) that questions common to the class members predominate over questions affecting only individual members' and (2) that class resolution is superior to alternative methods for adjudication of the controversy.'" _Steering Comm. v. Exxon Mobil Corp._, 461 F.3d 598, 600 (5th Cir. 2006) (quoting _Bell Atl._, 339 F.3d at 301).  The predominance and superiority requirements are demanding.  _Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l_, 695 F.3d 330, 347-48 (5th Cir. 2012).

**_Predominance._**  Under Rule 23(b)(3), "common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.  In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." _Amchem_, 521 U.S. at 615 (citations, quotations, and alterations omitted).  The predominance inquiry ordinarily "requires the court to assess how the matter will be tried on the merits, which 'entails identifying

18

the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'"  <u>In re Wilborn</u>, 609 F.3d 748, 755 (5th Cir. 2010) (quoting <u>O'Sullivan v. Countrywide Home Loans, Inc.</u>, 319 F.3d 732, 738 (5th Cir. 2003)).  "[C]ommon issues must constitute a significant part of the individual cases." <u>Mullen</u>, 186 F.3d at 626.  This is a matter of weighing, not counting, issues. <u>Id.</u>

*Superiority.*  Rule 23(b)(3) also requires that the Court make a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In examining the superiority of a class action to other forms of relief, a court should consider "(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; [and] (D) the difficulties likely to be encountered in the management of the class action." <u>Id.</u>  The Fifth Circuit has  observed the "interrelationship between predominance and superiority," <u>Steering Committee</u>, 461 F.3d at 604.

The Advisory Committee's notes to Rule 23(b)(3) comment on the impact of the predominance inquiry on superiority in mass tort

cases:

> A "mass accident" resulting in injuries to numerous
> persons is ordinarily not appropriate for a class action
> because of the likelihood that significant questions, not
> only of damages but of liability and defenses to
> liability, would be present, affecting the individuals in
> different ways. In these circumstances an action
> conducted nominally as a class action would degenerate in
> practice into multiple lawsuits separately tried.

Fed. R. Civ. P. 23(b)(3) advisory committee's note (citation
omitted); see also Castano, 84 F.3d at 745 n.19 (discussing
advisory committee note and citing Georgine v. Amchem Products,
Inc., 83 F.3d 610, 627-28 (3d Cir. 1996); In re American Medical
Sys., 75 F.3d 1069, 1084-85 (6th Cir. 1996)).

### B.

This case is not suitable for class certification. Even
assuming that the Rule 23(a) requirements of numerosity,[5] adequacy
of representation,[6] and typicality[7] are met, the Court cannot find

---

[5] The plaintiffs contend that the proposed geographical area
contains 1,054 houses and that the S&WB received more than 80
complaints about the construction project. The defendants respond
that the plaintiffs have been able to identify fewer than 30
complaints, and that some of those are unrelated to the litigation.
Because the numerosity question is by far the issue that least
concerns the Court, the Court will assume for purposes of this
motion only, that the plaintiffs are correct and there are hundreds
of potential class members.

[6] The defendants raise serious questions as to the ability of
the potential class representatives to represent the class. Some
did not attend their scheduled depositions and do not fully
understand the nature of the lawsuit or the damages to their
houses.

[7] The houses in the neighborhood vary in size, age, and the
extent of post-Katrina repairs. They also incurred various amounts

that the remaining 23(a) requirement–commonality–is satisfied, nor
the Rule 23(b)(3) demands of predominance and superiority.

*Commonality.*  The plaintiffs contend that the common questions
of law and fact sufficient to support class certification include:
(1) the actions or inactions of the defendants; (2) the ultra-
hazardous nature of pile driving; (3) the magnitude and duration of
vibrations; (4) dewatering and soil subsidence caused by the
defendants' conduct; (5) the defendants' policies and delays in
investigating claims and repairing property damage; and (6) the
noise and disturbances that allegedly caused property damage and
emotional distress.  The problem, however, is that even if this
Court were to find that some of the defendants are liable to some
property owners for ultra-hazardous pile driving, and that perhaps
others are liable for damage-causing dewatering, that is only the
very beginning; the key issue of causation remains varied and
unresolved.  Resolving each of the plaintiffs' proposed common
issues in their favor does not resolve an issue that is "central to
the validity" of each of the class members' claims "in one stroke."
Wal-Mart, 131 S.Ct at 2551.

The plaintiffs' own experts expose that class-wide causation
determinations are not practicable.  Not all of the houses
necessarily react to vibrations or dewatering in the same way, and
it would be difficult to distinguish between damages attributable

_____

of damage as a result of the five-year construction project.

to vibrations or dewatering.  It is in all likelihood true that the five-year construction project damaged several houses in parts of the project area in varying ways, to different extents, and because of acts by different defendants.  But questions of causation cannot be resolved in one stroke, and an answer in the plaintiffs' favor as to any of the plaintiffs' alleged common issues not does result in a resolution of any key issue on a class-wise basis.  The plaintiffs submit that because the defendants knew that their activities would cause damage and did in fact cause damage, causation has been established.  In a general sense, that may be true.  But that an expansive construction project caused varying degrees and types of damage to some houses does not mean that the claims of each resident should be certified as a class action.  To determine causation for each homeowner will require a finding of individual causation.

*Predominance.*  The fatal defect in this case that renders it inappropriate for class certification is that individual questions will predominate over class-wide concerns.  Predominance demands central questions "capable of class-wide determination," using class-wide, as opposed to individualized, evidence.  MP Vista, Inc. v. Motiva, 286 F.R.D. 299, 303 (E.D. La. Sept. 20, 2012).  This requirement is necessary to prevent the class from degenerating into a series of mini-trials.  As with the question of commonality, specific causation similarly defeats the indispensability of

predominance.[8]  Each homeowner will have to show that the damage to their house is a result of the actions of particular defendants, and the defendants will counter with their shoddy post-Katrina repairs.   Relevant to the inquiry will also be the age, size, structure, and distance from the construction site and vibration-heavy area of each specific house.   As in <u>Fulford v. Transport Serv. Co.</u>, Nos. 03-2472, 02-2636, 2004 WL 1208513, at *3 (E.D. La. May 27, 2004), a putative class action involving a chemical spill from a tank truck, individual questions predominate:

> Specific causation, that is, whether hydrogen sulfide actually caused the damages Plaintiffs allege it caused, on the other hand, will be a highly individualized issue, as will be damages.  Plaintiffs will be required to show that it is the hydrogen sulfide that actually caused the damages they claim to individually suffer from. Plaintiffs will need to present evidence from at least one medical doctor for every individual Plaintiff who is familiar with that Plaintiff to make this showing. Defendants will likely counter each individual's doctor's opinion with another medical doctor also familiar with that individual. Each individual's medical history will also play an important role. So too will the circumstances of each Plaintiff's exposure to hydrogen sulfide, such as where they were and whether other environmental agents capable of causing Plaintiffs' maladies were present at that Plaintiff's location and, if so, which ones.

---

[8] The parties also dispute the effect of individualized damage calculations.  To salvage their efforts to construct a class, the plaintiffs recommend a bifurcated trial, with a separate damages determination in which an expert can create a formula to calculate damages for each property owner.  The defendants respond that such a formula is merely speculative at this point.  Either way, the issue that most concerns the Court is that a separate damages trial–whether with an adequate formula or not–does not answer the very central and critical question of specific causation.

Here, as in <u>Fulford</u>, "[t]he issues of specific causation and damages will require a huge amount of time and effort by the Court to assess the merits of each individual's claim." <u>Id.</u> at *4.

Defendant Blue Iron responds separately to discuss predominance only. It submits that because the defendants are not alleged to have acted in a conspiracy, they are-if liable at all-subject to joint and divisible liability. La. Civ. Code art. 2324(B). Apportionment of fault among the defendants would thus predominate over class-wide issues. The S&WB is the owner of the canal; Hill Brothers was the prime contractor with the Corps and performed all the driving of timber piling, round pipe pilings, and concrete pilings; Blue Iron installed and extracted metal sheet pilings; Griffin designed and installed the dewatering system; Bhate is alleged to have provided geotechnical services and aid; and the subcontractors, in particular, performed work that had little, if any, overlap among them. Blue Iron submits that apportioning fault on a property-by-property basis would devolve into a convoluted three-step process: first each property owner would need to establish that his property was damaged by construction activities; next they would need to establish whether the damage was caused by dewatering or construction vibrations; and finally, if a property owner proved that damage was caused by vibrations generally, an inquiry would have to be done to determine the source of those vibrations (some pile-driving was done by Blue

24

Iron but some by Hill Brothers).  As of yet, the record fails to instruct what vibration locations are attributable to which defendant.

Unlike <u>In re Deepwater Horizon</u>, 739 F.3d 790 (5th Cir. 2014), where the court affirmed class certification, the damage-causing conduct at issue here is not a single, catastrophic, central event, like the blowout of a well in the Gulf of Mexico.  The <u>Deepwater Horizon</u> court was not asked to consider whether individual plaintiffs were damaged by many separate events over a long period of time.

***Superiority.***  The plaintiffs submit that class action is superior to individual lawsuits because "[i]f plaintiffs establish that S&WB, Hill Brothers or Blue Iron are absolutely liable for pile driving, class members would only have to prove the amounts of their damages."  (citations omitted).  Class certification "will allow predominating common factual and legal issues regarding pile-driving, dewatering and construction and general causation for the resulting damages to the plaintiffs' homes to be determined in a single lawsuit," the plaintiffs contend.  Thus, the plaintiffs' argument boils down to this: if the other Rule 23 factors were met, class certification would be superior for the reasons it is typically superior in an appropriate case.  The defendants respond that the "central" issue on which the plaintiffs hang their hat—article 667 strict liability for pile driving—would affect very

few properties, if any, because of the short reach within the project area of the resulting vibrations. And the class-wide effect from dewatering remains at best obscure. Thus, there is no common set of evidence, and no efficiencies will be gained from a class action.

The Court agrees with the defendants. There is no substantiated or persuasive submission that a class action is preferable to several consolidated cases, where each case necessarily turns on its own particular evidence of specific causation and damages.

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiffs' motion to certify class action and the defendants' motions to strike are hereby DENIED.[9]


New Orleans, Louisiana, June 25, 2015


MARTIN C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[9] Plaintiffs, for the most part, and defendants, to some extent, conflate preliminary class certification with trial merits. That some residents in the project area might have grievances similar to other area residents, does not equate with satisfying Rule 23's mandate.